File Name: 05a0621n.06
Filed:  July 25, 2005

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | |
|---|---|
| CAROL E. HOWELL, | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) ON APPEAL FROM THE |
| v. | ) UNITED STATES DISTRICT |
| | ) COURT FOR THE MIDDLE |
| RIVERGATE TOYOTA, INC., | ) DISTRICT OF TENNESSEE |
| | ) |
| Defendant-Appellee. | ) |

Before:     **NELSON** and **SUTTON**, Circuit Judges, and **WELLS**, District Judge.[*]

**DAVID A. NELSON**, Circuit Judge.  This appeal is from an order that granted the defendant's motion to compel arbitration and dismissed the plaintiff's employment discrimination action without prejudice.  We agree with the district court's determination that the parties entered an enforceable agreement to arbitrate.  We also agree that arbitration in accordance with the defendant's procedures has not been shown to be inadequate for the vindication of statutory rights.  Accordingly, we shall affirm the challenged order.

---

[*]The Honorable Lesley Wells, United States District Judge for the Northern District of Ohio, sitting by designation.

I

The plaintiff, Carol Howell, was an automobile salesman for the defendant, Rivergate Toyota, Inc. In 1996, about 10 years into the parties' employment relationship, Mr. Howell signed an agreement to arbitrate any employment-related dispute he might have with Rivergate. It is undisputed that acceptance of the agreement was a condition of Howell's continued employment.

By signing the arbitration agreement, Mr. Howell acknowledged receipt of Rivergate's "Employment Dispute Resolution Procedure" (the "Procedure") and agreed to be bound by its terms. The Procedure requires arbitration to be initiated within 180 days after a dispute arises. The party initiating arbitration must nominate an arbitrator, whereupon the other party may either accept the nominee or nominate a different arbitrator. If the parties cannot agree on an arbitrator, either party may apply to a court in Bexar County, Texas, for an order appointing an arbitrator. The parties must split the arbitrator's fee equally, and, in most cases, each party must bear its own costs.

Discovery is limited, under the Procedure, to "matters which are relevant and admissible under the Federal Rules of Evidence." According to its terms the Procedure may be amended by Rivergate "as may be necessary or appropriate to give effect to the intent of this Procedure, in light of circumstances which arise after the date hereof."

Rivergate terminated Mr. Howell's employment in May of 2002. Howell sued Rivergate in federal district court a year later. The complaint alleged violations of the Age

Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.*, the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*, the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq.*, and the statutory and common law of Tennessee.

Rivergate moved to dismiss and to compel arbitration. The district court granted the motion, holding that the arbitration agreement was not an unenforceable adhesion contract; that the agreement was supported by consideration; and that the terms of the agreement were sufficiently definite. The court also held that Mr. Howell had not carried his burden of presenting evidence that the agreement's fee-splitting provision would deter employees from seeking to vindicate their statutory rights.

After an unsuccessful motion to alter or amend the dismissal order, Mr. Howell filed a timely notice of appeal.

II

We first address our jurisdiction to hear the appeal. Under *ATAC Corp. v. Arthur Treacher's, Inc.*, 280 F.3d 1091, 1095-1101 (6th Cir. 2002), "an order deferring to arbitration" is appealable if the order constitutes a "final decision." The district court's order dismissed Mr. Howell's action, albeit without prejudice, and the order thus constitutes a final decision. See *Zayed v. United States*, 368 F.3d 902, 904-05 (6th Cir. 2004) (holding that a dismissal without prejudice constitutes a final decision). Accordingly, appellate jurisdiction exists under 28 U.S.C. § 1291.

III

Mr. Howell maintains that the parties' arbitration agreement is unenforceable. The enforceability of an agreement to arbitrate is determined in accordance with the applicable state law – in this case, the law of Tennessee. See *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 675-76 (6th Cir. 2003) (en banc). Our review of the district court's determination is de novo. See *id.* at 675.

A

As did the district court, we reject the proposition that the arbitration agreement is an unenforceable adhesion contract. First of all, it is not clear to us that the agreement is a contract of adhesion. The Tennessee Supreme Court defines a contract of adhesion as "a standardized contract form offered to consumers of goods and services on essentially a 'take it or leave it' basis, without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or service except by acquiescing to the form of the contract." *Buraczynski v. Eyring*, 919 S.W.2d 314, 320 (Tenn. 1996) (internal quotation marks omitted).[1] As this definition makes clear, "[a] contract is not adhesive merely because it is a standardized form offered on a take-it-or-

---

[1]Although *Buraczynski* speaks of contracts "offered to consumers of goods and services," employment contracts can also be contracts of adhesion under Tennessee law. See *Vargo v. Lincoln Brass Works, Inc.*, 115 S.W.3d 487, 492 & n.5 (Tenn. Ct. App. 2003).

leave-it basis." See *Cooper v. MRM Investment Co.*, 367 F.3d 493, 500 (6th Cir. 2004). There must also be an "absence of a meaningful choice for the party occupying the weaker bargaining position" – *i.e.*, "the choice to 'leave it'" must amount to "no choice at all." *Id.* at 501-02 (internal quotation marks omitted).

In the employment context, this means that an arbitration agreement is not a contract of adhesion unless the employee would be unable to find a suitable job if he refused to agree to arbitrate. See *id.* at 502-03. The employee bears the burden of showing that other employers would not hire him. See *id.* at 503.

Mr. Howell contends that his age – 59 at the time – would have prevented him from getting another job had he refused to sign Rivergate's arbitration agreement. In support of this contention he cites congressional findings on the disadvantages faced by older workers. But "[g]eneralizations about employer practices in the modern economy cannot substitute for" evidence relating to a particular employee's ability to find a job in a particular locality. *Id.* at 502. In the absence of specific evidence that Mr. Howell could not have found other suitable employment, Rivergate's arbitration agreement should not be considered an adhesion contract. See *id.* at 502-03.[2]

---

[2]In *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 385 (6th Cir. 2005), *petition for cert. filed*, 73 U.S.L.W. 3734 (June 7, 2005) (No. 04-1672), we suggested that "the threat of termination from one's current employment," as opposed to the threat of not being hired in the first place, "would appear to be sufficient in itself to demonstrate 'the absence of a meaningful choice for the party occupying the weaker bargaining position.'" But that suggestion was made in relation to employees who were presented with an arbitration agreement shortly after beginning their employment. In those circumstances, we

But even if the arbitration agreement is "adhesive," we are not persuaded that it is unenforceable under Tennessee law. Not all adhesion contracts are unenforceable. See, *e.g.*, *Buraczynski*, 919 S.W.2d at 320. "Enforceability generally depends upon whether the terms of the contract are beyond the reasonable expectations of an ordinary person, or oppressive or unconscionable." *Id.*

The terms of the arbitration agreement and the Procedure are not so one-sided, in our view, that an ordinary person would regard them as unreasonable, oppressive, or unconscionable. Mr. Howell suggests that the 180-day limitations period is unreasonable, but an identical 180-day period is provided by federal law for the filing of charges of discrimination with the Equal Employment Opportunity Commission. See 42 U.S.C. § 2000e-5(e)(1). We do not think a limitations period equal to that applicable under federal employment discrimination law is manifestly unfair.

Nor do we think that the provision allowing Rivergate unilaterally to amend the Procedure is unreasonable or unconscionable. By its terms, the unilateral amendment provision authorizes only those changes that are "necessary or appropriate to give effect to the intent of th[e] Procedure" in the light of changed circumstances. (The "intent" of the Procedure is expressly stated: "for arbitration . . . to be the exclusive, final and binding

---

said, the employees "likely had foregone other employment opportunities and would have been severely disadvantaged by having to inform prospective employers that they were terminated shortly after their hire." *Id.* The circumstances in the case at bar are obviously different.

method of resolution of any [employment-related dispute].") The provision does not, in our view, authorize changes to the parties' substantive rights and obligations. Further, Rivergate's duty of good faith and fair dealing prohibits it from amending the Procedure for an improper or oppressive purpose. *Cf. Elliott v. Elliott*, 149 S.W.3d 77, 84-85 (Tenn. Ct. App. 2004) (stating that every party to a contract is bound by an implied duty of good faith and fair dealing).

Finally, although the provision requiring application to a Bexar County, Texas, court for appointment of an arbitrator is peculiar, we do not think it is unconscionable. On the record presented here, we have no reason to suppose that the judges of Bexar County are likely to appoint arbitrators who are partial to Rivergate or hostile to employees' claims. Nor, as we shall discuss below, has Mr. Howell shown that the added expense of applying to an out-of-state court will prevent employees from seeking to vindicate their rights.

Overall, we are satisfied that Rivergate's Procedure is reasonably fair and non-oppressive. Absent some other defect, the arbitration agreement should be enforced.

B

If it is not an unconscionable adhesion contract, Mr. Howell argues, the arbitration agreement is unenforceable because (1) the minds of the parties never met, (2) the terms of the agreement are too indefinite, and (3) the agreement lacks mutuality. Each of these

defects, in Mr. Howell's submission, stems from the unilateral amendment provision. Again, we are not persuaded that this provision renders the agreement unenforceable.

Under Tennessee law, the requirements for an enforceable contract include "a meeting of the minds of the parties in mutual assent" and terms that are "sufficiently definite to be enforced." *Higgins v. Oil, Chemical & Atomic Workers International Union, Local #3-677*, 811 S.W.2d 875, 879 (Tenn. 1991) (internal quotation marks omitted). The unilateral amendment provision is not inconsistent with these requirements, in our view. By signing the arbitration agreement Mr. Howell acknowledged that he understood and agreed to be bound by the terms of the Procedure, including the provision authorizing Rivergate to amend those terms as "necessary or appropriate" to give effect to the parties' intent to arbitrate. There is no evidence that Mr. Howell did not know or understand what he was signing. Thus, mutual assent is not lacking. Nor does the fact that the terms of the Procedure may be changed render the agreement too indefinite to be enforced, given the limited nature of the changes that are permissible.

Tennessee law also requires that a contract not be illusory – *i.e.*, that it impose genuine obligations on both parties. See, *e.g.*, *Parks v. Morris*, 914 S.W.2d 545, 550 (Tenn. Ct. App. 1995) ("[I]f one or both parties to a contract have the right to cancel or terminate the agreement, then the contract lacks mutuality and is unenforceable") (internal quotation marks omitted). The arbitration agreement and the Procedure require that all disputes between the parties be resolved through arbitration. This reciprocal obligation to arbitrate satisfies the

mutuality requirement. See *Cooper*, 367 F.3d at 505. Mr. Howell contends that Rivergate's authority to amend the Procedure vitiates the company's obligation. But as we have said, the unilateral amendment provision authorizes only procedural changes that promote the agreement's purpose – *i.e.*, resolution of disputes through arbitration. It does not allow Rivergate to avoid its obligation to arbitrate.

Rivergate's obligation distinguishes this case from *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306 (6th Cir. 2000), *cert. denied*, 531 U.S. 1072 (2001), where the court held an arbitration agreement unenforceable because one party reserved the right to amend the arbitration procedure. The arbitration agreement at issue in *Floss* was between an employee and a provider of dispute resolution services, not between the employee and his employer. See *Floss*, 211 F.3d at 309. The dispute resolution firm obligated itself only to provide an arbitral forum, not to submit its own disputes to arbitration. It was that obligation that was rendered illusory by the firm's unfettered right to choose the nature of the forum. See *id.* at 309-10, 315-16. *Floss,* in our view, is not controlling here.

IV

In addition to his arguments based on Tennessee contract law, Mr. Howell presents arguments to the effect that several provisions of the arbitration agreement and the Procedure are unenforceable under federal law. The provisions in question are those concerning the 180-day limitations period, the limitation of discovery to materials admissible under the

Federal Rules of Evidence, the appointment of an arbitrator, and the splitting of the arbitrator's fee.

Federal statutory rights, such as those asserted by Mr. Howell in this action, "may be subject to mandatory arbitration only if the arbitral forum permits the effective vindication of those rights." *Morrison*, 317 F.3d at 658. If a provision of an arbitration agreement prevents the vindication of statutory rights, therefore, "those rights cannot be subject to mandatory arbitration under that agreement." *Id.* Accordingly, we must determine whether the contractual terms identified by Mr. Howell prevent the vindication of statutory rights.

We are not persuaded that the limitations and discovery provisions prevent potential litigants from vindicating their rights. As we have said, a 180-day limitations period is not unreasonably short. *Cf.* 42 U.S.C. § 2000e-5(e)(1) (establishing a 180-day limitations period for filing a charge of employment discrimination with the EEOC). Nor is the scope of discovery allowed by the Procedure so narrow that it renders the arbitral forum inadequate to vindicate statutory rights. The Procedure allows for document production, three depositions of fact witnesses, and additional discovery upon a showing of good cause. The Procedure limits discovery to matters that are admissible under the Federal Rules of Evidence, while the Federal Rules of Civil Procedure allow discovery that "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). This limitation is not likely, in our view, to prejudice an employee's ability to prove his statutory claims. See *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31

(1991) (holding that "more limited" discovery does not render an arbitral forum inadequate for resolution of statutory claims); *cf. Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 387 (6th Cir. 2005) ("[T]he opportunity to undertake extensive discovery is not necessarily appropriate in an arbitral forum . . . ."), *petition for cert. filed*, 73 U.S.L.W. 3734 (June 7, 2005) (No. 04-1672).

Mr. Howell's most promising argument, in our view, is that the provisions for appointment of an arbitrator (by applying to an out-of-state court) and for splitting of the arbitrator's fee are unduly burdensome on aggrieved employees. In *Morrison*, this court held that a provision of an arbitration agreement is unenforceable if it imposes costs that are likely to deter a substantial number of employees from vindicating their rights in the arbitral forum. See *Morrison*, 317 F.3d at 659, 661, 663. It seems to us that the fee-splitting provision, and perhaps the provision for appointment of an arbitrator, might impose such costs. See *id.* at 657, 676-77, where we refused to enforce a provision requiring the employee to pay half of the arbitrator's fee in advance of the arbitral hearing.

But Mr. Howell bears the burden of demonstrating that the provisions in question impose costs that are likely to have an impermissible deterrent effect. See *Morrison*, 317 F.3d at 659-60. And unlike the plaintiffs in *Morrison*, Mr. Howell has not carried that burden. He has presented no evidence of the average or typical arbitrator's fees, no evidence of the costs of applying to a Texas court for appointment of an arbitrator, and no evidence of how such fees and costs compare to the costs of litigation. *Cf. id.* at 664 (holding that the

deterrent effect of a cost-splitting provision must be weighed in the light of typical arbitration costs relative to the costs of litigation). He has presented no evidence of the impact the arbitral costs might have on a person with a "job description and socioeconomic background" similar to his. *Id.* at 663 (holding that "similarly situated potential litigants" must be considered when weighing the deterrent effect of a cost-splitting provision). In sum, Mr. Howell has presented no evidence from which a court could find that the fee-splitting and arbitrator-selection provisions are likely to deter employees from vindicating their statutory rights. Given this failure of proof, we cannot say that the challenged provisions are unenforceable under federal law.

Accordingly, and because we find no basis in Tennessee contract law for invalidating the arbitration agreement, the order compelling arbitration and dismissing Mr. Howell's action without prejudice is **AFFIRMED**.